UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

――――

MARTIN T. SOLOMON,

                    Plaintiff,                    Case No. 1:13-cv-257

v.                                                Honorable Janet T. Neff

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                    Defendants.
_____/

## OPINION

          This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation

Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any

prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a

claim upon which relief can be granted, or seeks monetary relief from a defendant immune from

such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's

*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504

U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed on immunity

grounds and/or for failure to state a claim.

## Discussion

I.      Factual allegations

Plaintiff presently is incarcerated at the G. Robert Cotton Correctional Facility, but complains of events that occurred at the Gus Harrison Correctional Facility (ARF).  In his *pro se* complaint, he sues the Michigan Department of Corrections (MDOC) and the following ARF employees:  Business Office Staff Unknown Elliot, Prisoner Accounting Supervisor Unknown Party and Grievance Coordinator W. Sweigert.

Plaintiff's complaint concerns the withdrawal of all of his funds from his prisoner account in February 2013.  Plaintiff states that Defendants Elliot and Unknown Party confiscated all of the funds that Plaintiff received from his porter job, or $8.14, so that he was left with no money in his prisoner account.  Plaintiff claims that he owes secured party "Martin Antonio Solomon" as first-in-line creditor.[1]  (Compl., docket #1, Page ID#5.)  Moreover, as Plaintiff did not have any money in his prisoner account, he alleges that he was unable to purchase "electronic stamps," hygiene items, prepaid phone cards, over-the-counter medication and other store products. (*Id.*)  Plaintiff further complains that Defendants Elliot and Unknown Party discriminated against him by removing all the money from his account while other similarly situated prisoners, who owe court fees, restitution and other institutional debts, were allowed to maintain $9.00 to $10.00 a month in their account to purchase stamps, prepaid phone cards and other vendor products.  Because Plaintiff cannot purchase "electronic stamps," he does not have the ability to send electronic mail to his family and friends who help him report staff misconduct.  (*Id.*)

---

[1]The Court finds that Plaintiff refers to himself as "Martin Antonio Solomon."  (*See* Compl., docket #1, Page ID#14.)  However, the Court notes that Plaintiff is identified in the Michigan Department of Corrections Offender Tracking Information System (OTIS), http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=301631 (visited Oct. 30, 2013), as Martin T. Solomon.

Plaintiff has been on modified access to the grievance process since January 16, 2013.[2]  Plaintiff states that Grievance Coordinator Sweigert denied him access to the prison administrative grievance process so that Plaintiff could not exhaust his claims.

Plaintiff claims that Defendants Elliot and Unknown Party impaired the contract between debtor Plaintiff and secured party "Martin Antonio Solomon," in violation of the  Uniform Commercial Code, the Michigan constitution, "Article [I,] Clause X of the U.S. Constitution[, which provides] that no state shall make any law that impairs the obligation of contract" and the Fourteenth Amendment.  (Compl., docket #1, Page ID##5, 8.)  Plaintiff further complains that Defendants Elliot and Unknown Party's actions in removing all of the funds from his account violated MDOC Policy Directives, the Equal Protection Clause of the Fourteenth Amendment and the Michigan constitution.  Reading Plaintiff's complaint liberally, Plaintiff also alleges that Defendants Elliot and Unknown Party violated his First Amendment right to access the courts and his Eighth Amendment rights because Plaintiff could not buy electronic stamps, hygiene items, over-the-counter medication and other items from the commissary.  *See Haines*, 404 U.S. at 520.  Finally, Plaintiff alleges that Grievance Coordinator Sweigert violated his due process rights because he denied Plaintiff access to grievances.

Plaintiff requests declaratory and injunctive relief, and compensatory and punitive damages.

---

[2]Under MDOC policy, a prisoner may be placed on modified access for filing "an excessive number of grievances which are vague, duplicative, raise non-grievable issues, or contain prohibited language . . . or [are] unfounded . . . ."  MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH. (eff. July 9, 2007).  The modified access period typically lasts for ninety days, but it may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance.  *Id.*  While on modified access, the prisoner only can obtain grievance forms through the Step I Grievance Coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy.  *Id.*, ¶ KK.

II.    <u>Immunity</u>

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

III.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Defendant Sweigert

Plaintiff complains that Defendant Sweigert denied him access to the grievance process because he put Plaintiff on modified access.  Plaintiff has no due process right to file a prison grievance.  The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendant Sweigert's conduct did not deprive him of due process.

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (*i.e.*, by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977).  The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.

For all these reasons, Plaintiff fails to state a claim against Defendant Sweigert.

**B.      Defendants Elliot and Unknown Party**

Plaintiff alleges several claims against Defendants Elliot and Unknown Party. First, Plaintiff argues that Defendants Elliot and Unknown Party violated the Uniform Commercial Code, the Michigan Constitution, "Article [I,] Clause X of the U.S. Constitution" and the Fourteenth Amendment for failing to honor the contract between debtor Plaintiff and secured party "Martin Antonio Solomon." (Compl., docket #1, Page ID#8.) Plaintiff also claims that Defendants Elliot and Unknown Party's removal of the funds from his prisoner account violated MDOC Policy Directives, the Fourteenth Amendment and the Michigan constitution. Reading Plaintiff's complaint liberally, Plaintiff further alleges that Defendants Elliot and Unknown Party violated his First Amendment right to access the courts because he could not buy electronic stamps and his Eighth Amendment rights because he could not buy hygiene items and over-the-counter medication from the commissary. *See Haines*, 404 U.S. at 520.

**1.      *Due Process Clause***

Plaintiff alleges that Defendants Elliot and Unknown Party wrongfully removed all of the funds from his prison account in violation of his due process rights. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36

-7-

(1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot meet his burden. The Sixth Circuit has found that Michigan law provides "several adequate post-deprivation remedies" to a prisoner asserting improper removal of money from his prison account. *Copeland*, 57 F.3d at 480. In a number of cases similar to this one, the Sixth Circuit has affirmed dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate. *Id.* at 479–80 (money wrongly withheld from prison account); *Mowatt v. Miller*, No. 92–1204, 1993 WL 27460, at *1 (6th Cir. Feb. 5, 1993) (misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85–2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). Accordingly, Plaintiff fails to state a due process claim for the removal of money from his prisoner account.

2. *Equal Protection Clause*

Plaintiff claims that Defendants Elliot and Unknown Party removed all of the money from Plaintiff's prison account but did not wipe out any other prisoners' accounts in violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd.*

-8-

*of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998).

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).  To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff has failed to aver any facts that suggest Plaintiff could prevail on his equal protection claim.  First, Plaintiff has not identified any similarly situated prisoner from whom Plaintiff was treated differently.  *See Tri-Health, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 791 (6th Cir. 2005) (discussing requirement that similarly situated inquiry requires disproving all conceivable bases for distinguishing comparables).  Moreover, Plaintiff has failed to allege that any difference in treatment was intentional.  On February 13, 2013, the Michigan Department of Corrections removed $8.14 from Plaintiff's account and summarized it as "Padlock Payable."  (Attach. to Compl., docket #1-1, Page ID#18.)  The deduction of funds on February 13, 2013, was merely an

isolated incident, and, thus, fails to demonstrate that Plaintiff was intentionally treated differently.

Finally, Plaintiff has not shown that there was no rational basis for any difference in treatment.  The

state has a legitimate interest in having prisoners defray the cost of their institutional debts and court

fees.  Accordingly, Plaintiff's equal protection claim fails against Defendants Elliot and Unknown

Party.

3.      *Access to the Courts*

Plaintiff alleges that Defendants Elliot and Unknown Party denied him access to the

courts by failing to provide him with money to purchase "electronic stamps" for sending electronic

mail to communicate with outside family and friends, who help him with prison staff misconduct

complaints.  (Compl., docket #1, Page ID#5.)

It is clearly established that prisoners have a constitutionally protected right of access

to the courts under the First and Fourteenth Amendments.  *See  Lewis v. Casey*, 518 U.S. 343, 354

(1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

Prison officials have a two-fold duty to protect a prisoner's right of access to the courts.  *McFarland*

*v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide

affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in

particular criminal and habeas corpus cases, as well as other civil rights actions relating to the

prisoner's incarceration.  *Id.* (citing *Bounds*, 430 U.S. at 824-28).  Second, the right of access to the

courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility

to the courts.  *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430

U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

Plaintiff's claim fails because he does not allege actual injury to pending or contemplated litigation. Plaintiff merely states that he was unable to communicate with friends and family who help him with prison-staff misconduct complaints. Plaintiff, however, does not explain how any litigation was hindered by the lack of communication with his friends and family. The Supreme Court has squarely held that "actual injury" is an element of the claim that must be pled in the complaint. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002) ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."). Accordingly, Plaintiff fails to state an access-to-the-courts claim.

### 4.    *Eighth Amendment*

To the extent Plaintiff claims that his inability to buy "electronic stamps," hygiene items, prepaid phone cards and over-the-counter medicine from the commissary amounted to cruel and unusual punishment in violation of the Eighth Amendment, his claims have no merit. (Compl., docket #1, Page ID#5.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per

curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff complains that he was denied the ability to buy certain items from the prison store. Plaintiff, however, only alleges that he could not buy those items in February 2013. At most, the taking of Plaintiff's funds from his prisoner account for one month was a temporary inconvenience. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis*, 257 F.3d at 511; *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). Because

Defendants' conduct did not rise to the level of a serious risk to Plaintiff's health or safety, Plaintiff fails to state an Eighth Amendment claim.

### 5.      *Frivolous Claims*

Plaintiff claims that Defendants Elliot and Unknown Party have impaired the contract between debtor Plaintiff and secured party "Martin Antonio Solomon" by removing Plaintiff's funds in violation of the Uniform Commercial Code and "Article [I,] Clause X of the U.S. Constitution."[3] (Compl., docket #1, Page ID##5, 8.)  Plaintiff attached a UCC Financing Statement and UCC Financing Statement Amendment to his complaint, which lists "Martin Antonio Solomon" as both the debtor and secured party.  (Attach. to Compl., docket #1-1, Page ID##18, 19).

A claim may be dismissed as frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  Claims that lack an arguable or rational basis in law include:  (1) claims for which the defendants are clearly entitled to immunity, (2) claims of infringement of a legal interest which clearly does not exist, and (3) claims that lack an arguable or rational basis in fact describe fantastic or delusional scenarios.  *Neitzk*e, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1199.  The Court has the "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Neitzke*, 490 U.S. at 327. "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).  Examples of claims lacking rational facts include a prisoner's assertion that Robin Hood and his Merry Men deprived prisoners of their access to mail or that a

---

[3]The Court notes that there is no Clause X in Article I of the United States Constitution.

genie granted a warden's wish to deny prisoners any access to legal texts. *See Neitzke*, 490 U.S. at

327-28; *Lawler*, 898 F.2d at 1198-99. An *in forma pauperis* complaint may not be dismissed,

however, merely because the court believes that the plaintiff's allegations are unlikely. *Id.*

      Plaintiff's contract claims between debtor Plaintiff and secured party "Martin

Antonio Solomon" lack any rational basis in law or fact. (Compl., docket #1, Page ID##5, 8.)

Plaintiff is essentially raising ridiculous claims similar to those found in fraudulent UCC actions.

*See Brzezinski v. Smith*, No. 12–cv–14573, 2013 WL 2397522, at *3 (E.D. Mich. May 31, 2013)

("The UCC speaks only to commercial law and does not provide a proper basis for appealing a

criminal conviction, writing a habeas petition, or bringing a civil rights action . . . . Any appeal,

habeas petition, or civil rights action that relied on the UCC would be frivolous."). To the extent

Plaintiff's civil rights action raises a contract claim under the UCC and the United States

Constitution, it is frivolous.

### 6.    *State Law*

      Plaintiff claims that Defendants Elliot and Unknown Party violated the Michigan

constitution and MDOC Policy Directives. Defendants' alleged failure to comply with an

administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v.

Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir.

1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-

23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not

rise to the level of a constitutional violation because policy directive does not create a protectable

liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims.  "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp.*, *Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

For all these reasons, Plaintiff claims against Defendants Elliot and Unknown Party will be dismissed.

IV.   <u>Motions</u>

On September 26, 2013, Plaintiff filed a motion to stay or for appointment of counsel (docket #15).  Plaintiff states that he underwent back surgery and requests thirty days to stay his action while he recovers or obtains an attorney to handle his litigation.  The Court, however, has determined that Plaintiff's action is subject to dismissal on immunity grounds and/or for failure to state a claim.  As a result, his request for a thirty-day continuance or for an attorney will be denied as moot.

<b><u>Conclusion</u></b>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action under § 1983 will be dismissed on immunity grounds and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise jurisdiction over them.

-15-

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment and Order consistent with this Opinion will be entered.


Dated:  November 14, 2013                  /s/ Janet T. Neff
                                         Janet T. Neff
                                         United States District Judge